UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

City Cycle IP, LLC; City Cycle Tours, LLC;
City Cycle Franchising, LLC; Rhett Reynolds,

          Plaintiffs,

v.                                                                    Civil No. 12-1285 (JNE/SER)
                                                                   ORDER

Caztek, Inc.; Chatham, LLC; Sarah Frakes;
Matthew Frakes; Marshall Young,

          Defendants.

Plaintiffs City Cycle, IP, LLC, City Cycle Tours, LLC, City Cycle Franchising, LLC, and Rhett Reynolds (collectively, "City Cycle") brought this lawsuit alleging numerous claims against Defendants Chatham, LLC, Sarah Frakes, and Matthew Frakes (collectively, "Frakes Defendants"), Caztek, Inc. ("Caztek"), and Marshall Young ("Young"). Now before the Court is City Cycle's Motion for a Temporary Restraining Order and Preliminary Injunction, in which City Cycle seeks to enjoin certain activities of the Frakes Defendants.[1] For the reasons stated below, the motion is denied.[2]

## I.     BACKGROUND

In mid-2010, Plaintiff Rhett Reynolds ("Reynolds") became interested in starting a business renting pedal-powered, multi-passenger vehicles for tours. He established City Cycle Tours, LLC ("CCT"), City Cycle IP, LLC ("CC IP"), and City Cycle Franchising, LLC ("CC

---

[1] Although City Cycle initially sought injunctive relief with respect to all named Defendants, it has since withdrawn its motion as to Caztek and Young.

[2] In connection with this motion, the Frakes Defendants have also filed a Motion to Strike Reply Memorandum and Associated Materials. Although the motion to strike is meritorious, the materials submitted along with City Cycle's reply memorandum do not affect the Court's ruling on the motion for injunctive relief. For that reason, the Frakes Defendant's Motion to Strike is also denied.

1

Franchising"). In July 2010, Reynolds and Defendant Matthew Frakes, who had been high school friends, met at a bar and discussed Reynolds' business idea. Mr. Frakes worked as a design engineer for Caztek, an engineering firm, and recommended to Reynolds that Caztek could build the vehicles for Reynolds' business.

Reynolds contacted Caztek and on January 18, 2011, the two parties entered into a Development and Commercialization Agreement ("Reynolds-Caztek Contract"). Under the contract, Caztek agreed to design and build the vehicles in exchange for various commercialization, manufacturing, and sales rights. The specific rights conferred to each party under the terms of the contract are disputed in this litigation. Reynolds received his first vehicle in March 2011.[3] The vehicle designed for City Cycle is blue and white with "City Cycle Tours" appearing on the front and sides of the vehicle. It is a multi-passenger, pedal-powered vehicle upon which passengers can drink alcoholic beverages as they tour the Twin Cities. Reynolds operated tours in Minnesota during the summer of 2011, and then moved his operations to Florida. It is disputed whether Reynolds intended to return to Minnesota.[4] Reynolds registered the City Cycle® trademark with the United States Patent and Trademark Office in September 2011. He assigned his interest in the trademark to CC IP. CC IP also has three registrations pending for the trademark City Cycle Tours™.

---

[3] Disputes arose, however, between Caztek and Reynolds regarding the manufacturing and delivery of Reynolds' second vehicle, and as of the date of this Order, Reynolds has not received the second vehicle that he had purchased from Caztek.

[4] When customers inquired about City Cycle tours in Minnesota, Reynolds referred them to Mr. Frakes, stating "we are permanently in FL." But on June 7, 2012, City Cycle sent an email to past and/or potential customers, announcing that City Cycle is back in the Twin Cities. City Cycle's counsel asserted at oral argument that it City Cycle now operating again in the Twin Cities, but there is no evidence currently in the record to support this claim.

Meanwhile, Mr. Frakes and his sister, Sarah Frakes, had been in negotiations with Reynolds regarding the possible purchase of a City Cycle® franchise and/or vehicle. Mr. and Ms. Frakes formed Chatham, LLC, for the purpose of operating pedal-powered vehicle tours in the Twin Cities. During the course of these negotiations, Reynolds provided the Frakes with a customer list, containing approximately fifty names. There is nothing in the record indicating that any conditions were placed on the Frakes' use of the customer list. The Frakes ultimately decided that they did not want to purchase a franchise. Reynolds was reluctant to sell a vehicle without a franchise. The Frakes then turned to Caztek, who agreed to sell two vehicles to them.[5] The vehicles designed for the Frakes' business, called "Traveling Tap," are red and white, with "Traveling Tap" appearing on the front and sides of the vehicle. In addition to the vehicle itself, Caztek also provided the Frakes with a digital image of the vehicle. The image is similar to the image of City Cycle's vehicle, except it includes the "Traveling Tap" name and logo instead of "City Cycle Tours," and depicts a red and white vehicle, rather than a blue and white vehicle. In mid-May 2012, Ms. Frakes sent out an email to potential customers, stating:

> **Exciting News!** The "City Cycle" mega bike is back in the Twin Cities this summer with a new name and new look! Pedal and party with your family and friends on the all new **Traveling Tap**! **Return Customer Special!** The Traveling Tap would like to offer you a $15 discount on your first ride of summer 2012!
>
> **New features include:**
> - Seat backs
> - Misting System
>
> **Book today!**

The Frakes' vehicles were recently delivered and the Frakes appear to now be operating their business in the Twin Cities.

---

[5] Caztek also sold a vehicle to Young, who is no longer a party to this motion.

City Cycle filed this lawsuit on May 29, 2012.  It claims that Caztek did not have the right to sell the vehicles to the Frakes or provide the Frakes with a digital image of the vehicle.  City Cycle thus contends that the Frakes Defendants are unlawfully using the vehicles and digital image.  City Cycle also claims that the Frakes impermissibly used (and then deleted) the customer list that City Cycle had provided.  In its Verified Complaint, City Cycle asserts numerous claims against the Frakes Defendants, including claims of trademark infringement, violations of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, and tortious interference with business relations.

On May 29, 2012, City Cycle filed a motion for a temporary restraining order.  In that motion, City Cycle sought, among other things, to enjoin the Frakes Defendants from infringing or using the City Cycle® and City Cycle Tours™ marks, from using other confusingly similar marks, and from operating their pedal-powered vehicle business, Traveling Tap.  On June 1, 2012, this Court granted in part and denied in part that motion.  Based on the May 2012 email, which referred to the "'City Cycle' mega bike" being "back in the Twin Cities," the Court ordered, and the Frakes Defendants agreed, that the Frakes Defendants were prohibited from representing that City Cycle was operating as the Traveling Tap.  In all other respects, City Cycle's motion was denied.  On June 7, this Court denied City Cycle's request for leave to file a motion for reconsideration.  Additionally, the Court clarified the June 1 Order, permanently enjoining Defendants "from making any representation that City Cycle is now operating as the Traveling Tap."  The Court further ordered that "[a]ny existing representations to that effect, including through social media such as Facebook, Twitter, etc., must be permanently removed."

On June 22, City Cycle filed this current motion for a temporary restraining order and preliminary injunction.  City Cycle requests that the Court enjoin the Frakes Defendants from

soliciting, contacting, or contracting with any of City Cycle's customers or potential customers, including the customers on the allegedly misappropriated customer list. City Cycle also requests that the Frakes Defendants be enjoined from using the vehicles and operating their business.

## II. DISCUSSION

"When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705-06 (8th Cir. 2011) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Id.*

### A. Irreparable Harm

"The basis of injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)). "Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Id.* "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318–19 (8th Cir. 2009). "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski*, 648 F.3d at 706 (citation omitted).

5

To show irreparable harm, City Cycle first relies on its interpretation of the intellectual property rights conferred to Reynolds in the Reynolds-Caztek Contract. City Cycle argues that these rights amount to a "private patent because they mirror those rights provided by the United States Patent and Trademark Office." Pls.' Mem. Supp. 14. City Cycle provides no support for its "private patent" argument, but it is undisputed that there is no actual patent involved in this case. City Cycle's vehicle and digital image are simply not entitled to patent protection. Further, the Frakes Defendants were not a party to the Reynolds-Caztek Contract, so any "intellectual property" rights as defined in and conferred by that contract are inapplicable to these defendants. For that same reason, City Cycle's next argument that there is irreparable harm because a restrictive covenant in a contract was allegedly violated is also without merit— the Frakes Defendants were not a party to any contract with City Cycle and violated no restrictive covenant.

City Cycle also asserts that it is entitled to a presumption of irreparable harm because it has asserted trademark infringement claims.[6] The Frakes Defendants are already permanently enjoined from representing that City Cycle is operating as the Traveling Tap. Other than the one email that formed the basis for the permanent injunction, there is no other indication (or even any allegation) that the Frakes Defendants have used or continue to use City Cycle's marks—City Cycle® and City Cycle Tours™—in any way. The current motion does not even seek to enjoin the Frakes Defendants' use of City Cycle's marks—it seeks to enjoin their use of the vehicle,

---

[6] It is not clear whether it is still proper to presume irreparable harm after the decisions of the United States Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006), and *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). *See, e.g.*, *Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 845 (D. Minn. 2011) (discussing the possibility that a presumption of irreparable harm may no longer apply); *CHS, Inc. v. PetroNet, LLC*, Civ. No. 10-94 (RHK/FLN), 2010 WL 4721073, at *4 (D. Minn. Nov. 15, 2010) ("[I]t is unclear whether these cases [in which irreparable harm is presumed] remain good law in light of the Supreme Court's recent decisions . . . .").

6

digital image, and customer list. The vehicle, digital image, and customer list are not protected by federal trademark law. City Cycle's motion for injunctive relief has nothing to do with its trademark infringement claim. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). These activities, which are completely unrelated to City Cycle's claim for trademark infringement, do not warrant a presumption of irreparable injury.

City Cycle also attempts to argue that it will suffer irreparable harm in the form of lost market share and damage to its reputation and goodwill. Other than Reynolds' affidavit, in which he states that the Twin Cities experience short summers, there is no evidence regarding the Twin Cities' market for pedal-powered pubs, the size of that market, or what share of the market City Cycle has or might have occupied. City Cycle's argument regarding goodwill consists entirely of the following statement: "Plaintiffs are losing goodwill as their unfair competitor siphons off business and makes false claims about its history and place in the Minnesota market." Pls.' Reply Mem. 11. Although "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury," *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002), here there is no evidence that City Cycle ever established any reputation and goodwill, or how its reputation and goodwill have been or might be damaged. City Cycle only operated in the Twin Cities during one summer, and has presented no evidence of any customer relationships that have been harmed or ways in which customers' opinions regarding City Cycle have been affected by the Frakes Defendants' conduct. In fact, there is not even any evidence regarding how many customers City Cycle had serviced during its one

7

summer of operations,[7] or what sort of reputation and goodwill, if any, City Cycle established during that summer.

Finally, City Cycle also asserts that injunctive relief is necessary "to protect Plaintiffs' ability to attract new franchises to the Minneapolis area." Pls.' Mem. Supp. 17. But there is no evidence that City Cycle has the ability to sell franchises in the Minneapolis area, that it is even interested in selling franchises, or that there are any potentially interested buyers of the franchises. Thus, City Cycle's concerns regarding its possible sales of franchises are entirely speculative.

City Cycle has made no showing of irreparable harm, nor is it entitled to a presumption of irreparable harm. The injuries City Cycle claims—particularly the injuries to its reputation, goodwill, and franchising ability—are entirely speculative and without evidentiary support. But when seeking injunctive relief, "the injury must be both certain and great; it must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986); *see also Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently-existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." (internal quotation marks omitted)).

Further, the Court fails to see how City Cycle could not be adequately compensated with monetary damages if City Cycle ultimately prevails. City Cycle could recover the profits it would have earned during the 2012 summer season, as well as the profits it would have earned from selling the vehicles directly to the Frakes Defendants. Generally, where money damages

---

[7] City Cycle refers to a customer list containing approximately fifty names. The list is not in the record, nor is it clear that these fifty individuals actually used City Cycle's services. For example, the names might represent individuals who expressed interest in receiving information, but had never actually done business with City Cycle.

would be sufficient to remedy a plaintiff's injuries, there is no irreparable harm.[8] *See, e.g.*, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987) (explaining that there is no irreparable harm where a party's injury "can be remedied in a suit for money damages"); *CHS*, 2010 WL 4721073, at *5 (finding that the lost customers and lost sales allegedly attributable to the defendants' misconduct would be fully compensable with money damages); *Travelers Express Co., Inc. v. Transaction Tracking Techs., Inc.*, 305 F. Supp. 2d 1090, 1095 (D. Minn. 2003) (finding no irreparable harm where "calculation of monetary damages from lost contracts and price erosion would be possible"); *NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. Supp. 2d 1039, 1045 (D. Minn. 2001) (finding that the defendant's allegedly wrongful use of the plaintiff's trade secrets to compete in the market against the plaintiff could be adequately remedied by an award of money damages, including an amount for lost profits).

"Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Gelco*, 811 F.2d at 418 ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction . . . ."); *Roudachevski*, 648 F.3d at 706 ("[W]e need not dwell on [plaintiff's] likelihood of success on the merits because he has not satisfied the threat of irreparable harm requirement, a necessity in proving the propriety of injunctive relief at this stage."). City Cycle has failed to show the irreparable harm necessary to obtain preliminary injunctive relief. This is a sufficient basis upon which to deny the motion.

---

[8] Economic loss may constitute irreparable harm "where the loss threatens the very existence of a [movant's] business." *Packard Elevator*, 782 F.2d at 115. Here, there is no allegation or evidence that the existence of City Cycle's business has been threatened.

**B. Likelihood of Success**

In this motion, City Cycle has focused on just two of its claims with respect to the Frakes Defendants: (1) trademark infringement and violations of the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), and (2) tortious interference with business relations.

*1. Trademark Infringement and MUDTPA Claim*

As previously explained, City Cycle's current motion—which has nothing to do with its protected marks—is unrelated to its claim of trademark infringement. Like its trademark infringement claim, City Cycle's claim under the MUDTPA is also based on allegations that the Frakes Defendants are using City Cycle's marks in a manner likely to cause confusion or misunderstanding as to any affiliation, connection, or association between City Cycle and Traveling Tap, and is likely to cause confusion or misunderstanding as to City Cycle's sponsorship or approval of Traveling Tap. Again, this claim is unrelated to the current motion for preliminary injunctive relief, which seeks not to enjoin the Frakes Defendants' use of City Cycle's marks or other similar marks, but rather to enjoin their use of the vehicles, digital image, and customer list. The only evidence supporting City Cycle's claims of trademark infringement—the May 2012 promotional email—already formed the basis of the existing permanent injunction and is irrelevant to the motion currently before the Court. There is no evidence that the Frakes Defendants are continuing to use City Cycle's marks or any other similar marks. Thus, there is very little likelihood of success on the merits of any trademark infringement or MUDTPA claim based on the Frakes Defendants' use of the vehicles, image, or customer list.

The Court also rejects City Cycle's arguments that it is entitled to some sort of federal intellectual property protection for the vehicle and image of the vehicle. There are no patents,

trademarks, or copyrights related to these items. Instead, City Cycle relies primarily on the Reynolds-Caztek Contract, which defines "intellectual property" for purposes of the contract and confers certain rights with respect to the "intellectual property" on the contracting parties. But the manner in which "intellectual property" is defined in the Reynolds-Caztek Contract is irrelevant with respect to the Frakes Defendants, who were not parties to that contract. Further, the contractual definition of "intellectual property" has no bearing on federal trademark statutes.

At oral argument, counsel for City Cycle asserted for the first time that the vehicles themselves are protected as City Cycle's trade dress. Upon further inquiry, City Cycle argued that the vehicles' unique design and various components, including the ergonomic design of its seats, when considered together constitute City Cycle's trade dress. City Cycle, however, made absolutely no argument regarding trade dress in its written submissions. The words "trade dress" appear exactly once in City Cycle's briefs, and only in the conclusory statement that "Plaintiffs in this case will suffer irreparable harm if Defendants are permitted to use Reynolds' intellectual property, proprietary materials, confidential client information, trademarks and trade dress." Pl.'s Mem. Supp. 16. "The trade dress of a product is the 'total image of a product, the overall impression created, not the individual features.'" *Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 667 (8th Cir. 1996). "A trade dress is entitled to protection under § 43(a) of the Lanham Act if: (1) it is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) it is primarily nonfunctional; and (3) its imitation would result in a likelihood of confusion in consumers' minds as to the source of the product." *Id.* City Cycle has cited no law regarding trade dress infringement. It has made no argument and has introduced no evidence regarding any of the three prongs necessary for trade dress protection. Thus, it has shown no likelihood of success on the merits of a trade dress infringement claim.

## 2. *Tortious Interference with Business Relations*

City Cycle contends that the Frakes Defendants tortiously interfered with business relations in two ways. First, City Cycle argues that the Frakes Defendants interfered with its prospective business relations with potential customers by contacting customers on City Cycle's customer list and by telling the public that City Cycle is now operating as the Traveling Tap. Second, City Cycle argues that the Frakes Defendants interfered with the Reynolds-Caztek Contract by inducing Caztek to sell vehicles directly to them, allegedly in breach of the contract.

To prove tortious interference with prospective relations, City Cycle must show that the Frakes Defendants "intentionally and improperly with [City Cycle]'s prospective business relation by (1) inducing a third person not to enter into or to continue the prospective relation, or (2) preventing the other from continuing the prospective relationship." *Hough Transit, Ltd. v. Nat'l Farmers Org.*, 472 N.W.2d 358, 361 (Minn. Ct. App. 1991). City Cycle must show that the Frakes Defendants committed some wrongful act. City Cycle alleges that Defendants interfered with its prospective business relations by contacting customers on City Cycle's customer list and by telling the public that City Cycle is now operating as the Traveling Tap. City Cycle contends that customers are confused regarding the relationship between City Cycle and Traveling Tap. As previously stated, however, this Court has already enjoined any representations to the public that City Cycle is now operating as the Traveling Tap, and there is no evidence that such representations have continued.[9] City Cycle points to two emails that

---

[9] City Cycle contends that the Frakes Defendants are promoting the Traveling Tap as the first traveling pub in the Twin Cities, and that this statement somehow amounts to a continuing representation that Traveling Tap is related to or associated with City Cycle. This argument, based on a televised news segment featuring Traveling Tap, is without merit. City Cycle does not assert (nor is there any evidence) that *it* was the first traveling pub in the Twin Cities, so it is unclear how any such statement by the Frakes Defendants (if they even made such a statement) would amount to a misrepresentation of Traveling Tap's relationship to City Cycle.

allegedly demonstrate consumer confusion. These emails, however, provide no evidence that this confusion was caused by anything the Frakes Defendants did, or by the activities that City Cycle now seeks to enjoin.

Moreover, there is no evidence that the Frakes Defendants' use of the customer list was wrongful. City Cycle acknowledges that this customer list was not a trade secret, and it is undisputed that City Cycle voluntarily provided the Frakes Defendants with the customer list and that no restrictions were placed on their use of the list. For example, City Cycle's provision of the customer list was not contingent on the Frakes Defendants signing a franchise agreement, noncompete agreement, or confidentiality agreement. In fact, there is not even evidence that there was any instruction, written or oral, that the list remain confidential or could only be used for certain purposes. Absent wrongful conduct on the part of the Frakes Defendants, there is no improper interference. *See United Wilde Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn. 1982) (explaining that competitors may interfere with another's prospective contractual relations as long as "the relation concerns a matter involved in the competition between the [parties]," "the actor does not employ wrongful means," there is no "unlawful restraint of trade," and the actor's "purpose is at least in part to advance his interest in competing with the other").

Further, City Cycle has presented no evidence that any particular customer was induced not to enter into or continue, or was prohibited from entering into or continuing, a relationship with City Cycle. In fact, the emails City Cycle submitted in support of its claims of consumer confusion also suggest that the individuals who were contacted by the Frakes Defendants were still willing to do business with City Cycle. City Cycle assumes, without providing any supporting evidence, that consumers who book tours or enter into business relationships with Traveling Tap will not do the same with City Cycle. Because of City Cycle's failure to provide

13

evidence of a wrongful act committed by the Frakes Defendants and of any customers who were induced not to enter into or continue, or were prohibited from entering into or continuing, a relationship with City Cycle, City Cycle has made little showing of likelihood of success on the merits of this tortious interference claim.

City Cycle also argues that the Frakes Defendants tortiously interfered with the Reynolds-Caztek Contract by inducing Caztek to sell two vehicles to them, an action City Cycle contends Caztek was not permitted to do under the terms of the contract.[10] To prove tortious interference with a contract, a plaintiff must prove "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). City Cycle contends that Mr. Frakes had knowledge of the Reynolds-Caztek Contract and that he either knew or should have known that Caztek was not permitted to directly sell any vehicles directly to customers. There is no evidence, however, regarding the damages City Cycle suffered from the alleged interference. According to City Cycle, Caztek was contractually prohibited from selling the vehicles to the Frakes Defendants—only Reynolds could sell the vehicles. Presumably, then, the damages would be the profits Reynolds would have earned from the sale. But there is no evidence in the record as to what those damages are—there is no evidence regarding the price the Frakes Defendants paid to Caztek, nor is there evidence regarding the price they would or should have paid to Reynolds. Even if there were evidence of such damages in the record, these would be purely monetary damages—the profit Reynolds would have made from the sale—and would be easily

---

[10] For purposes of this motion, the Court will assume, without deciding, that the Reynolds-Caztek Contract does not permit Caztek to sell the vehicles directly to the Frakes Defendants. This, however, is the subject of the dispute between City Cycle and Caztek in this litigation, and the issue will not be decided here.

14

compensable with a monetary award. Thus, despite any likelihood of success on the merits of this particular claim, preliminary injunctive relief is still inappropriate

**C. Balance of Harms**

The Court next considers the balance between the threat of irreparable harm to City Cycle and "the injury that granting the injunction will inflict" on the Frakes Defendants. *See Dataphase*, 640 F.2d at 114. As discussed above, City Cycle has made little to no showing that it will be irreparably harmed absent the injunction. City Cycle contends that it has invested more effort and financial resources into its products, services, and branding than have the Frakes Defendants, and that because the Frakes Defendants are newcomers to the market, they will not be unduly harmed if the Court were to grant the injunction. Although the Frakes Defendants are new to the traveling pub market, City Cycle, too, is a relative newcomer to the field. City Cycle operated for only one season—the summer of 2011—and Traveling Tap appears to be operating this summer. This is not a case where the plaintiff has been established in the market for years and the defendant had yet to enter the market. *See, e.g.*, *MSP Corp. v. Westech Instruments, Inc.*, 500 F. Supp. 2d 1198, 1217-18 (D. Minn. 2007). Rather, neither City Cycle nor Traveling Tap appears to be an established presence in the Twin Cities market for traveling pubs.

Despite City Cycle's general assertions that it has invested more effort and resources in its products and services than have the Frakes Defendants, City Cycle has presented no evidence to support this argument. There is no evidence in the record regarding how much of an investment City Cycle has made, or how the denial of an injunction would affect that investment. In the absence of an injunction, City Cycle appears capable of continuing to operate its business, market its services, and produce revenue—either here in the Twin Cities or in Florida. The only

harm City Cycle may suffer absent a preliminary injunction is the loss of profits it would have earned from customers who booked services with Traveling Tap instead of City Cycle.

In contrast, the Frakes Defendants have shown that although they have just recently entered the market, they have invested over $150,000 in the Traveling Tap and are relying on the income from that business this summer to pay not only business expenses, but also the expenses of this litigation. City Cycle's requested injunction would prevent the Frakes Defendants from contacting any potential customers and from operating their business entirely. Basically, it would put the Frakes Defendants out of business. This factor weighs in favor of Defendants. *See, e.g.*, *Ryko Mfg. Co. v. Eden Servs.*, 759 F.2d 671, 673 (8th Cir. 1985) (affirming the district court's finding that the balance of the harms tipped in favor of the party who would be forced out of business and unable to finance the ongoing litigation over the other party who could continue to make sales and for whom money damages would provide adequate compensation); *NewLeaf Designs*, 168 F. Supp. 2d at 1046 (finding the harm to the defendant "potentially quite severe" because, as a start-up company that was "entirely dependent" on its sales of the product at issue "to produce revenue necessary to make loan payments and other necessary business expenditures," an injunction would likely force the defendant out of business).

Further, City Cycle could have taken action to prevent the Frakes Defendants' allegedly impermissible use of the customer list. City Cycle could have refused to provide the customer list until the parties had signed a franchise agreement, or could have required that the Frakes sign a confidentiality or non-compete agreement as a condition of receiving the customer list. But City Cycle placed no conditions on the Frakes' use of the list. "Where [a plaintiff] could have taken steps to prevent the 'unlawful' competition about which it now complains but failed to do so, the balance of hardships does not weigh in its favor." *CHS*, 2010 WL 4721073, at *7.

16

Finally, "'[t]he primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief.'" *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789-90 (8th Cir. 1989) (citation omitted). Traveling Tap appears to now be operating in the Twin Cities. There is no evidence in the record that City Cycle is currently operating in this market. Thus, in order to grant the relief requested, it would be necessary to disturb the status quo. This factor further tips the balance of the harms in favor of denying preliminary injunctive relief.

**D. Public Interest**

City Cycle asserts that there is a public interest in protecting consumers from trademark infringement and from confusion over the origin of the products they purchase, as well as in preventing misrepresentations from being made in the marketplace. *See, e.g.*, *MSP Corp.*, 500 F. Supp. 2d at 1218. But there is no evidence indicating that any infringement or misrepresentation presently exists. There is also no evidence that any possibly confusion is related to the activities City Cycle seeks to enjoin. City Cycle has not shown how the Frakes' use of the vehicles, images, or customer list amounts to trademark infringement or public misrepresentation or has caused public confusion. Thus, there is no strong public interest in enjoining these activities. There is, however, a strong public interest in promoting competition in the market. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 505 (8th Cir.1987). City Cycle seeks to prevent the Frakes Defendants from competing at all in the market for traveling pubs—in Minnesota or elsewhere. The public interest factor weighs in favor of the Frakes Defendants.

For all of the above reasons, the Court finds that a temporary restraining order or preliminary injunctive relief is inappropriate. City Cycle's motion is denied.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. City Cycle's Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 19] is DENIED.

2. The Frakes Defendants' Motion to Strike Reply Memorandum and Associated Materials [Docket No. 47] is DENIED.

Dated: August 24, 2012

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
